**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DEBORAH J. HALL**                                                                         **PLAINTIFF**

**V.**                              **NO. 4:08CV00002-BD**

**MICHAEL J. ASTRUE,**
**Commissioner, Social Security Administration**                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deborah J. Hall brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").

**I.     Administrative Proceedings:**

Plaintiff filed her application for DIB on August 11, 2005, alleging disability since May 30, 2005. (Tr. 53) The claim was denied initially and upon reconsideration. (Tr. 34-35) A hearing was held before an Administrative Law Judge[1] ("ALJ") on January 12, 2007. (Tr. 13, 319) Ms. Hall was present at the hearing, along with her attorney. (Tr. 321)

---

[1]The Honorable Penny M. Smith.

1

On March 28, 2007, the ALJ issued a decision finding that Plaintiff was not disabled under the Act and denying her claim for benefits. (Tr. 13-19)  On November 9, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner.  Plaintiff seeks judicial review from this decision under 42 U.S.C. § 405(g).

## II.     Background:

At the time of the hearing, Plaintiff was forty-four years old and lived with her husband. (Tr. 325, 373)  She had an eleventh grade education and had passed a general educational development test. (Tr. 325)  Plaintiff claimed disability based on lumbar disc disease, left knee pain, and bipolar disorder. (Tr. 106)  She was taking Depakote and Prozac for the bipolar disorder, and over-the-counter pain relievers. (Tr. 367)

## III.    ALJ's Decision:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart P, 20 C.F.R. Part 404; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from doing past relevant work; and (5) if so, whether the

impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

The ALJ found that Plaintiff was not engaged in substantial gainful activity, and that she suffered from degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, and bipolar disorder. (Tr. 15) Plaintiff did not suffer from a "listed" impairment, or combination of impairments, according to the ALJ's findings. (Tr. 15) The ALJ determined that Plaintiff did not have the residual functional capacity ("RFC") to perform her past, relevant work. (Tr. 18) She found, based on the testimony of a vocational expert ("VE"), however, that there are a significant number of jobs in the national economy which Plaintiff could perform. (Tr. 18)

IV.  **Analysis:**

    A.  *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). In reviewing the record as a whole, the Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a

conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F3d 575, 578 (8th Cir. 2006).

    B.    *Plaintiff's Impairments*

Plaintiff complains the ALJ ignored Plaintiff's complaints of upper extremity numbness and fatigue leading to a low GAF score. At the hearing, the ALJ noted Plaintiff's low back pain, torn left knee meniscus, and bipolar disorder and then asked if there were any other medically determinable impairments that Plaintiff wanted her to focus on. (Tr. 360-61) The only additional impairment mentioned by Plaintiff's counsel was residual effects from a spider bite which the ALJ found was not "severe." (Tr. 15, 361) Plaintiff did not raise upper extremity numbness or fatigue as potentially severe impairments in her application for benefits or at the hearing.

Although the ALJ must fairly and fully develop the record, she "is not obliged 'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir.2003) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

Plaintiff points the Court to three instances on the record where the Plaintiff complained of upper extremity numbness. The first is in a progress note from Wesley C.

Thomas, M.D.  In the note, Dr. Thomas states that Plaintiff has "occasional numbness and weakness in her hands, especially the right hand.  Radiating pain up the arm at times and it does not bother her all the time.  It is not bothering her at this time." (Tr. 192)  The physician assessed the numbness as "likely due to a pinched nerve in her neck, degenerative disc disease in the neck."  Dr. Thomas asked Plaintiff to pay more attention to which fingers were affected. (Tr. 192)  When Plaintiff returned to the clinic in April, June, July, and August, 2006, she did not complain about numbness in her extremities.

At the hearing, Plaintiff claimed that on December 31, 2006, she "experienced a burning pain go through the right side of my head into my chest and down my arm.  And since then the tingling's just grew." (Tr. 372)  In March 2007, Plaintiff complained of numbness in her right arm to Jack F. Dunn, D.O.  (Tr. 270)  Dr. Dunn diagnosed Plaintiff with a muscle spasm, and stated it was his impression Plaintiff had neuropathy to the right upper extremity.  (Tr. 270)   Dr. Dunn did not order any follow-up tests.  According to the medical records, Plaintiff did not complain of right arm numbness or tingling during her visit to the clinic in April, 2007.

Given the lack of objective medical evidence on the record and Plaintiff's failure to claim upper extremity numbness as an impairment at the time of filing or at the hearing, the ALJ was not required to investigate further.

Plaintiff also claims the ALJ ignored her "fatigue secondary to bipolar disorder" which resulted in a low GAF score.  (#7 at p.11)  Plaintiff did not claim fatigue as a

severe impairment at the time of filing or at the hearing.  Further, GAF does not have a direct correlation to the severity requirements in mental disorders listings.  65 Fed. Reg. 50746, 50764-65 (2000).  The GAF assigned to Plaintiff was assigned by Erin Willcutt, a University of Central Arkansas student.  (Tr. 214)  A student is not an "acceptable medical source" upon which the ALJ may rely to establish a medically determinable impairment.  20 C.F.R. §§ 404.1513(a) (2006).  Under the circumstances, the ALJ was not required to investigate the Plaintiff's fatigue and GAF score further.

    C.    *Plaintiff's Residual Functional Capacity*

The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.  *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

In this case, the ALJ concluded, based on the entire record, that Plaintiff had the RFC to:

> perform sedentary work which involves lifting and/or carrying up to 10 pounds occasionally and less than 10 pounds frequently, standing/walking 2 hours in an 8-hour workday; alternating sitting and standing with standing up to 20 minutes at one time continuously; no climbing of scaffolds/ladders/ropes; occasional climbing of ramps and stairs; occasional stooping, crouching, crawling, kneeling and balancing; and only superficial contact with the public and little supervision for routine work but more supervision for non-routine work.

(Tr. 16)

Plaintiff complains that the ALJ drew her own inferences about Plaintiff's ability rather than relying on the opinions of treating and examining physicians when making the RFC assessment. As Plaintiff acknowledges, however, the ALJ outlined Plaintiff's physical problems as described in the medical records of her treating and examining physician in some detail. (Tr. 17-18) The ALJ noted that, despite Plaintiff's complaints of back pain radiating to the right leg, a June 10, 2005 MRI showed no nerve root compression, and the examination noted good movement in her leg. (Tr. 17) Regarding Plaintiff's knee pain, the ALJ noted that, in spite of Plaintiff's complaints about pain in her knees, her surgery was cancelled due to the Plaintiff's financial issues, and that Plaintiff treats her pain with over-the-counter medication. (Tr. 17)

The ALJ also noted that at a psychological examination, Steve A. Shry, Ph.D. stated that Plaintiff did not appear to have any physical limitations. (Tr. 158) When he asked Plaintiff whether she thought surgery would improve her knee condition, she said, "I really don't know, but I doubt it." (Tr. 155)

The ALJ acknowledged that Plaintiff had a history of bipolar disorder, but during her examination with Dr. Shry, on November 21, 2005, she did not appear to be actively psychotic or manic, and did not appear to be psychologically impaired in adaptive functioning. (Tr. 17) A progress note dated September 1, 2006, indicated that Plaintiff was "stable on Prozac." (Tr. 187) Further, the Plaintiff testified that while she was on Prozac, she had no crying spells. (Tr. 367)

7

Plaintiff's argument seeks to place the burden of proof on the Commissioner, but it is the claimant's burden, and not that of the Commissioner, to prove residual functional capacity. *Goff v. Barnhart*, 421 F.3d 785,790 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If more information was needed from her treating and examining physicians to establish her RFC, it was Plaintiff's burden to introduce that evidence at the hearing or asked for the record to be held open so that she could introduce the evidence. In this case, Plaintiff did neither.

Plaintiff argues that the ALJ impermissibly relied on opinions of state agency physicians who did not examine her. (#7 at p. 11) The ALJ considered these physicians' findings as required by 20 C.F.R. § 404.1527(f)(2)(i). (Tr. 16) She did not, however, impermissibly rely on their findings in making her RFC determination. (Tr. 15-18) In fact, the ALJ's RFC assessment differed from the conclusions of state agency physicians that Plaintiff was capable of lifting twenty pounds occasionally and 10 pounds frequently and was capable of standing and walking 6 hours in an 8-hour workday. (Tr. 161-62) Further, there was a lack of restrictions on Plaintiff's activities by her physicians. See *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of claimant's treating physicians offered opinion she was so impaired or disabled she could not work any job); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)(no functional restrictions on activities is inconsistent with claim of disability); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)(ALJ may consider absence of such opinion by treating physicians).

The ALJ properly assessed Plaintiff's RFC based on all of the relevant evidence, and there is substantial evidence in the administrative record to support the Commissioner's conclusion.

D.   *Plaintiff's Credibility*

Finally, Plaintiff claims the ALJ's credibility determination was unsupported by credible evidence, and that she erred in discrediting Plaintiff's subjective complaints of pain. (Tr. 16-18)  The ALJ considered Plaintiff's subjective complaints in light of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). (Tr. 16-18)  In addition, the ALJ cited Social Security Ruling 96-7p and 20 C.F.R. § 404.1529 (Tr. 16-17) which tracks *Polaski* and 20 C.F.R. § 404.1529(c)(3), and elaborates on them.

Under the Court's holding in *Polaski*, the ALJ must consider all of the evidence presented relating to Plaintiff's subjective complaints, including the her prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

9

At the hearing, Plaintiff testified that she could only sit for 15 minutes (Tr. 361), could only stand for 15 or 20 minutes (Tr. 362), could walk about 50 yards (Tr. 365), and needed reminding to take her medicine (Tr. 369). In a Function Report dated August 24, 2005 (Tr. 93), however, Plaintiff indicated that she: groomed without assistance (Tr. 87); did not need reminders to take care of her personal needs (Tr. 88); cooked family meals (Tr. 88); went outside, walked, and drove (Tr. 89); shopped for groceries two times a week for one to two hours (Tr. 89); paid bills, used a checkbook and counted change (Tr. 89); attended church on a regular basis (Tr. 90); played piano and guitar (Tr. 90); watched television (Tr. 90); and read (Tr. 90). In a Social Security Disability Report dated August 24, 2005, Plaintiff stated that walking and standing caused her pain, but did not mention sitting as a source of pain. (Tr. 94) Further, in a September 28, 2006 Disability Report, Plaintiff again mentioned only standing and walking for "long periods of time" as limiting her ability to work. (Tr. 106)

The ALJ made express credibility findings and gave her reasons for discrediting Plaintiff's subjective complaints. *E.g., Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). Plaintiff engaged in daily activities, which are inconsistent with the level of pain and limitation alleged. See *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001)(plaintiff took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television,

listened to radio, read and visited friends and relatives); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)(plaintiff dressed and bathed herself, did some housework, cooking and shopping). Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations, the lack of more treatment, Plaintiff's daily activities, her functional capabilities and the lack of restriction placed on Plaintiff by her physicians, the ALJ appropriately discounted Plaintiff's subjective complaints. See, *e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

## V.     Conclusion:

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the agency physicians' assessments, and the hearing transcript. There is substantial evidence in the record as a whole to support the Commissioner's conclusion that Plaintiff had the residual functional capacity to make an adjustment to other work available in the local, regional, and national economy.

Accordingly, Plaintiff's appeal is DENIED. The Clerk is directed to close the case, this 20th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE